BOWES, Judge,
dissenting with written reasons.
I respectfully dissent from the majority opinion of my learned brothers in this case. The majority view seems to be based on the belief that Standard had complete control over its operations, when, in fact, it was the agent and false front for Jones, capable *1223 of binding Jones to whose benefit the insurance inured, as found by the trial judge. Such a finding would seem to ignore many contrary clauses in the contract between Standard and Jones, such as, but not limited to, these:
Jones will make available to Standard at the end of each week sufficient funds to pay any and all expenditures excluding capital expenditures incurred in the operation of the business during the upcoming week. It is understood and agreed that Standard will not operate the business with any of its funds but rather with funds advanced by Jones for this purpose. At no time will Standard’s funds be utilized in the operation of Standard except on an emergency basis, and if such event occurs, Jones will immediately refund such expenditures in accordance with this agreement.
And, also:
Standard will be responsible for hiring, firing, controlling and utilizing the work force of Standard and Standard is responsible for the manner, means and method by which Standard’s business is operated, all of which is subject to Jones’ approval.
It must further be noted that Jones, according to the contract, provided all other insurance for vehicles, building, contents, liability, flood, cargo, etc., except for Workmen’s Compensation Insurance which was to be obtained by Standard.
Joseph Golden, former president of Standard, testified that Jones actively sought to establish the contract to avoid dealing with the unions in New Orleans. He also stated that after the contract was confected he put in only three or four hours a day and “just acted as front man for them on a salary.” Jones hired its own terminal manager, Joe Stein. Mr. Stein then supervised the operations, including hiring and firing of employees. In addition, Golden was instructed to keep the relationship between Standard and Jones confidential.
The testimony of Mr. Golden contradicted in many respects the testimony of Robert Elmer and Irvin Tull, direct employees of Jones. However, as stated by the Third Circuit in Knockum v. Amoco Oil Co., 402 So.2d 90 (La.App. 1st Cir.1980), the trial court is vested with the task of judging the credibility of the witnesses and deriving facts from their testimony. An appellate court is not to substitute its own judgment for that of the trial court. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La.1973).
In the present case, the testimony of Mr. Golden is supported by the terms of the contract itself, whereas the testimony of others, not believed by the astute trial judge, is not. The fact that Standard may have done business with a Yellow Freight Forwarding Company does not demonstrate that Standard was not an agent of Jones.
The present case is one of actual agency existing between Standard and Jones as expressed by the contract and implied from the conduct of the parties, as factually determined by the trial court. Under La. C.C. Art. 3021, the principal is bound to execute the engagements contracted by the attorney conformably to the power confided to him. Jones, therefore, is bound to a third party, Liberty Mutual, for the insurance premium which it requested and instructed Standard to obtain.
The entire record, including the testimony of Mr. Golden, and especially the agreements between the parties, is replete with ample evidence to support the factual findings and conclusions of the learned trial judge. Accordingly, I would affirm his judgment.
For the foregoing reasons, I respectfully dissent from the majority opinion.